IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROSE M. CAMPBELL,
Plaintiff,

vs. Case No. 5:07cv196/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
Defendant.
_______________________________/

**REPORT AND RECOMMENDATION**

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for Supplemental Security Income benefits (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on June 22, 2004 (Tr. 11, 37–41).[1] Her application was denied initially and on reconsideration (Tr. 20–23, 27–30). On March 7, 2007, following a hearing,

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on October 26, 2007 (Docs. 11, 12).

an Administrative Law Judge (ALJ) determined that Plaintiff was not disabled (Tr. 11–17). On June 27, 2007, the Appeals Council denied Plaintiff's request for review (Tr. 3–5). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

II.     FINDINGS OF THE ALJ

On March 7, 2007, the ALJ made several findings relative to the issues raised in this appeal (Tr. 11–17):

1)   Plaintiff has not engaged in substantial gainful activity since October 1, 2003, the alleged onset of disability date (20 C.F.R. §§ 416.920(b) and 416.971 *et seq*.).

2)   Plaintiff has the following severe impairments:  chronic right wrist and right hand pain, status post injury on the right wrist and hand (20 C.F.R. § 416.920(c)).

3)   Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.926).

4)   Plaintiff has the residual functional capacity (RFC) to perform a limited range of light work.  She is limited in the use of her right upper extremity and can only occasionally use right hand controls.  She also has occasional limitations reaching in all directions and handling.  She is precluded from performing fine manipulation. She can never climb ladders, ropes, or scaffolds, but she can frequently climb ramps or stairs, stoop, kneel, crouch and crawl, and she can occasionally balance.

5)   Plaintiff is unable to perform any of her past relevant work (20 C.F.R. § 416.965).

6)   Plaintiff was born on October 23, 1957, and was 47 years old on the date her SSI application was filed, which is defined as a younger individual, aged 45–49 (20 C.F.R. § 416.963).

7)   Plaintiff has a limited education and is able to communicate in English (20 C.F.R. § 416.964).

8)   Transferability of job skills is not material to the determination of disability because use of the Medical-Vocational Rules, as a framework, supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills (*see* Social Security Regulation (SSR) 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

    9) Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. §§ 416.960(c) and 416.966).

10) Plaintiff has not been under a disability, as defined in the Act, since June 22, 2004, the date her SSI application was filed (20 C.F.R. § 416.920(g)).

III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV. PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

### A. Personal History [2]

Plaintiff was born on October 23, 1957, and has a seventh grade education (Tr. 245). In the past, she has worked as a cashier and a day care worker (Tr. 264–65).

Plaintiff testified that her disability claim is based mainly on an injury to her right wrist that occurred during a fall, when she "broke [her] wrist and split the bone" (Tr. 245–46, 248). Plaintiff underwent surgery, but she testified that the surgery did not help because the surgeon "cut the ligaments in two of [her] fingers, the three fingers, so it didn't get no [sic] better" (Tr. 248). She stated that she is right-handed and cannot use three fingers on her right hand at all, but she has some use of her thumb and forefinger (*see* Tr. 245, 249, 253). Plaintiff then demonstrated for the ALJ how far back she could bend her fingers (Tr. 249). She further testified that her wrist condition has been the same since the surgery, despite going to therapy "30 different times" (Tr. 250). When it appeared that therapy was not helping, Plaintiff's states that her physician suggested another surgery, but because he could not give Plaintiff "a percentage" (i.e., what her chances were for a successful surgery), she declined to undergo a second surgery (*see* Tr. 251). She alleges that she is in pain on a daily basis, although some days the pain is worse than others (Tr. 252). Specifically, Plaintiff testified that her right hand/wrist never stops hurting. On a pain scale of 1–10, she stated that the pain stays at a 7–8 most of the time (Tr. 260). She testified that she takes over-the-counter pain medicine to help ease the pain, but it never makes it "quit" (Tr. 261). Plaintiff testified that she also tries to ease the pain with a warm or hot rag or a heating pad, and she does this two to three hours a day (Tr. 262).

The ALJ asked Plaintiff's attorney to describe her scar for the record (Tr. 257). He described it as discolored (reddish), about six inches long, and about a half an inch wide (*id.*). Plaintiff's attorney further described her wrist by stating that it looks like the tendons from the arm are pulling the wrist forward about 10–20 degrees (*id.*).

Plaintiff testified that it is hard to write because her muscles "pull back" and cause pain (*see* Tr. 249). She stated that she has to use a "big fat pen" to write (Tr. 254). Plaintiff testified that she

[2] The information in this section is derived from Plaintiff's memorandum in support of her complaint (Doc. 16).

can lift a laundry basket with her left hand but not with her right (*id.*). She also testified that she can carry a bag of groceries as long as it is not heavy (Tr. 255). Plaintiff testified that she eats with her left hand, and she has taught herself to comb her hair with her left hand (Tr. 255, 256). Plaintiff stated that she cannot tie shoes or "stuff like that" (Tr. 256). Plaintiff also testified that she currently lives by herself because her husband is incarcerated (Tr. 259). She does not mop, but she washes the dishes and vacuums with her left hand (*id.*). She stated that she drives when she can, using her left hand (*id.*).

Finally, Plaintiff testified that she wears a brace on her right hand at all times. She only takes it off when her hand starts sweating, which causes her scar to itch (Tr. 256–58). Plaintiff testified that she puts cream on her scar every day (Tr. 258).

B. Relevant Medical History[3]

Plaintiff injured her right wrist in a fall and was found to have an intro-articular fracture of the right distal radius in November 2003. She had malunion at the right wrist, and in January 2004, she underwent manipulation of arthrofibrotic joints and osteotomy and open reduction with hardware by David R. Dietrich, M.D.. Plaintiff followed up with Dr. Dietrich shortly after the surgery, at which time he noted that Plaintiff's incisions were healing well, she had "improved motion of her MP and IP joints of the fingers from pre-operative status," and she had normal sensation and good alignment (Tr. 164). The external fixator was removed in February 2004. In March 2004, x-rays indicated that the fracture and hardware were in good position and the bone graft appeared to be consolidating the fracture itself. In late March 2004, Plaintiff was told to begin aggressive hand rehabilitation with no lifting over five pounds. Plaintiff began therapy, and in April 2004, her treating physician noted that she was progressing with range of motion in her wrist and fingers. Additionally, therapy records revealed consistent progress. In August 2004, x-rays revealed that the hardware and fracture were essentially healed, but Plaintiff complained of pain and had 30 degrees flexion and 5 degrees extension in the right wrist. The treating physician opined that pain management would assist Plaintiff in controlling her discomfort and allowing her to self-rehabilitate her hand and wrist (Tr. 88–89, 157–86).

[3]The information in this section is derived from the opinion of ALJ (Tr. 11–17).

Plaintiff underwent a consultative examination with Osama Elshazly, M.D., in August 2004. Plaintiff's examination was unremarkable with the exception of her right wrist. She was diagnosed with chronic right wrist and right hand pain, status post injury, and status post surgical procedure of the right wrist with a long incision. Dr. Elshazly opined that, based on the objective evidence, Plaintiff was unable to use her right hand (Tr. 187–92).

C. Other Information Within Plaintiff's Claim File

Robert L. Steele, M.D., completed a Physical RFC Assessment on September 15, 2004 (Tr. 197–204). He opined that Plaintiff was able to frequently lift or carry ten pounds and occasionally lift or carry twenty pounds (Tr. 198). She could stand, sit, or walk six hours in an eight-hour workday (*id.*). Her ability to push or pull was unlimited (*id.*).[4] Plaintiff was occasionally able to crawl and frequently able to climb, balance, stoop, kneel, and crouch (Tr. 199). Additionally, Plaintiff was occasionally limited with regard to gross and fine manipulation using the right hand and fingers, but she was unlimited in reaching in all directions or feeling (Tr. 200). No visual or communicative limitations were established (Tr. 200–01). Other than to avoid hazards, such as machinery and heights, no other environmental limitations were established (Tr. 201).

David Guttman, M.D., completed a Physical RFC Assessment on November 24, 2004 (Tr. 233–40). He opined that Plaintiff was able to lift or carry twenty pounds occasionally and ten pounds frequently, and she could sit, stand, or walk six hours in an eight-hour workday (Tr. 234). Plaintiff's ability to push or pull was limited in the upper right extremity to the extent that she would be limited to only occasional use of right hand controls (Tr. 234).[5] Plaintiff was never able to climb ladders, ropes or scaffolds, but she could occasionally balance, and frequently stoop, kneel, crouch, and crawl (Tr. 235). Plaintiff is occasionally limited with her right hand in reaching or handling (gross manipulation) and always limited with regard to fingering (fine manipulation), but she has

---

[4]In concluding that Plaintiff's pushing and pulling abilities were unlimited, Dr. Steele noted Plaintiff's decreased range of motion and function with her right hand, but he stated that her consultative examination was otherwise benign (Tr. 198). Although he later opined that Plaintiff had some limitations with gross or fine manipulation using the right hand (*see* Tr. 200), the ALJ ultimately discredited Dr. Steele's opinion in favor of a more restrictive opinion (*see* Tr. 14).

[5]Dr. Guttman noted that post-surgical x-rays revealed a "healed fracture with good hardware placement" and that Plaintiff has "decreased grip and manipulation of right hand [and] limited flexion fingers of right hand" (Tr. 234).

no feeling (skin receptors) limitations (Tr. 236). Finally, no visual, communicative, or environmental limitations were established (Tr. 236–37).

V.   DISCUSSION

Plaintiff raises two issues on appeal. First, Plaintiff contends the ALJ failed to properly consider her subjective complaints of pain and other symptoms. Second, Plaintiff asserts that the ALJ erred in failing to pose a "complete hypothetical question" to the vocational expert (Doc. 16 at 1).

A.   Eleventh Circuit Pain Standard

Although Plaintiff generally asserts that the ALJ erred in considering her subjective complaints, and Plaintiff recites the Eleventh Circuit's pain standard in support (*see* Doc. 16 at 13–14), the argument Plaintiff ultimately presents is that the ALJ erred in failing to order a consultative examination to obtain current medical opinions regarding Plaintiff's conditions (*id.* at 14–15). Thus, the precise nature of Plaintiff's argument is unclear.

To the extent Plaintiff contends the ALJ failed to follow the Eleventh Circuit's pain standard, Plaintiff's argument fails. First, in analyzing Plaintiff's complaints, the ALJ referenced 20 C.F.R. § 416.929 (Tr. 14). The Eleventh Circuit has approved an ALJ's reference to and application of the standard set out in § 416.929, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002). Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

Second, the ALJ provided reasons for finding Plaintiff's subjective complaints less than fully credible. The ALJ noted that Dr. Dietrich's treatment notes — while very detailed — never suggest that Plaintiff cannot work (Tr. 15). "In fact," the ALJ noted, Dr. Dietrich "urges her to use her hand and do home therapy if she cannot afford private therapy" (*id.*). The ALJ's statement is supported by the record. For example, in June 2004 Dr. Dietrich recommended that Plaintiff continue therapy on her own, he gave her a "foam squeeze ball" to assist in this endeavor, and he noted that he would "like to give her a chance to use the hand for activities of daily living" (Tr. 159; *see also* Tr. 164 (recommending in January 2004 that Plaintiff "work on aggressive stretching of the fingers and the

thumb [] to re-establish and to maintain motion"); Tr. 131 (continuing to recommend in March 2004 "aggressive therapy for her hand, wrist rehabilitation and range of motion" and restricting Plaintiff — not from lifting altogether — but from lifting more than five pounds with the right hand)). It is significant that Dr. Dietrich found no limitations consistent with disability. *See* Singleton v. Astrue, 542 F. Supp. 2d 367, 378–79 (D. Del. 2008) (in evaluating a plaintiff's credibility, ALJ did not err in considering, among other factors, that "none of [p]laintiff's treating physicians identified any specific functional limitations arising from her fibromyalgia or other conditions that would render her totally disabled"); Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing Brown v. Chater, 87 F.3d 963, 964–65 (8th Cir.1996) (lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability)). Indeed, the fact that no physician opined that Plaintiff was disabled, alone, might be considered substantial evidence for the ALJ's decision. *See* Rice v. Apfel, 990 F. Supp. 1289, 1294 (D. Kan 1997) (citing Ray v. Bowen, 865 F.2d 222, 226 (10th Cir. 1989)). The ALJ also noted, however, that in addition to containing no disabling limitations, Dr. Dietrich's records reflect gradual improvement (Tr. 14). Indeed, in pertinent part, the records reflect that in March 2004, although Plaintiff had some joint stiffness, there was minimal swelling and the soft tissues looked "excellent" (Tr. 131). In April 2004, Plaintiff reported progress with range of motion, and x-rays showed that her fracture was healing and was "in excellent position" (Tr. 115–16). In June 2004, although Plaintiff still had stiffness and could not make a "composite fist," it was noted that Plaintiff had made some slight gains and that her wrist and hand looked better with no appreciable soft tissue swelling (Tr. 159). In August 2004, x-rays showed that Plaintiff's fracture had "essentially healed and the hardware [was] in excellent position" (Tr. 158). Although not determinative of a claimant's credibility alone, an ALJ is permitted to consider the objective medical signs and laboratory findings, or lack thereof, when determining a claimant's credibility. *See* 20 C.F.R. § 404.1529(c).

In further discrediting Plaintiff's complaints, the ALJ noted that Plaintiff was able to vacuum, drive a car, and care for herself despite problems with her right hand (Tr. 15). It was proper for the ALJ to consider Plaintiff's daily activities when evaluating her subjective complaints of disabling pain and other symptoms. *See* Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987);

20 C.F.R. § 404. 1529(c)(3)(i).[6] Thus, the reasons articulated by the ALJ for discrediting Plaintiff's subjective complaints are proper, and they are based upon substantial evidence in the record. Accordingly, the ALJ did not err in discrediting Plaintiff's allegations. *See* Jones v. Dep't of Health and Human Serv's, 941 F.2d 1529, 1532 (11th Cir. 1991).

To the extent Plaintiff contends the ALJ erred in failing to order a consultative examination, Plaintiff has also failed to establish entitlement to relief. "A hearing before an ALJ is not an adversarial proceeding," and "the ALJ has a basic obligation to develop a full and fair record." Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Medical sources should be recontacted when the evidence received from that source is inadequate to determine whether the claimant is disabled. 20 C.F.R. § 404.1512(e). If the medical sources do not provide sufficient medical evidence, the ALJ may order a physical or mental consultive examination at the government's expense. 20 C.F.R. § 404.1517. However, the ALJ is not required to order an examination if such an examination is not necessary in order to enable the ALJ to make a disability determination. *See* Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999) (holding that additional medical testimony was unnecessary where the record was sufficient for a decision). In evaluating Plaintiff's contention, this court should consider "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995) (quotations and citations omitted). "[T]here must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." Graham, 129 F.3d at 1423.

Plaintiff asserts that the ALJ should have ordered a consultative examination "to have current medical opinions on [Plaintiff's] conditions and [determine] whether or not she does indeed suffer from RSD [reflux sympathetic dystrophy]" (Doc. 16 at 14–15). Plaintiff bases her argument on a single notation made by Dr. Dietrich on June 3, 2004, which specifically states as follows: "I think [Plaintiff] had a mild element of RSD and this looks better today than it has . . ." (Tr. 159)

[6] In general, the legal standards applied are the same regardless of whether a claimant seeks disability insurance benefits (DIB) or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations in this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

(emphasis added). Plaintiff appears to also allege, that because she was not formally diagnosed, the ALJ had a duty to further investigate whether Plaintiff indeed suffered from RSD (*see* Doc. 16 at 14–15). Plaintiff's argument is without merit. The medical evidence in this case does not contain evidentiary gaps that prevented the ALJ from making an informed disability determination. Indeed, the record contains numerous and detailed "longitudinal" records from Dr. Dietrich, consisting of, among other things, his opinions regarding Plaintiff's abilities (*e.g.*, she should lift no more than five pounds and should participate in "aggressive" therapy), x-ray results, Plaintiff's complaints, and Plaintiff progress. Similarly, the record contains numerous records from Plaintiff's physical and occupational therapy, documenting Plaintiff's progress during the months of January through May 2004 (*see* Tr. 106–14, 118–30, 134–39, 143, 145–49, 151–56). Dr. Dietrich's statement, that Plaintiff might have previously had a mild element of RSD, is simply not enough to warrant ordering a consultative examination. This is especially true given that Dr. Dietrich also opined that even if Plaintiff previously had an element of RSD, it was "mild," and it "looked better" in June 2004 (Tr. 159). In sum, the ALJ's failure to order a consultative examination did not constitute a failure to develop of a full and fair record because there is sufficient evidence in the record regarding Plaintiff's condition.[7]

B. Testimony of the Vocational Expert (VE)

The ALJ posed a hypothetical question to the VE based on the limitations found in Dr. Guttman's January 2004 RFC assessment (*see* Tr. 233–40, 265). In this assessment, as noted *supra*, Dr. Guttman opined that Plaintiff could not use her right hand for fingering or fine manipulation (Tr. 236). In posing his question to the VE however, based on Dr. Guttman's assessment, the ALJ stated that, "There is a manipulative limitation. The individual is limited in reaching to occasional on the right side. Handling is limited to occasional on the right side, <u>and fingering is limited to occasional on the right side</u>." (Tr. 265) (emphasis added). The ALJ also noted that the hypothetical individual is right-handed (*id.*). In response to the ALJ's question, and relying on job descriptions as contained in the Dictionary of Occupational Titles (DOT), the VE noted that such an individual could not

[7]Moreover, as this court is well aware, Plaintiff has the burden of proving she is disabled, and therefore, she is responsible for producing evidence to support her claim. *See* <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1275 (11th Cir. 2003).

return to Plaintiff's past work, but the person could perform available work as a surveillance system monitor (DOT # 379.367-010), information clerk (DOT # 237.367-022), and gate guard (DOT # 372.667-030) (*see* Tr. 264, 266–67).

Plaintiff asserts that the ALJ erred in relying on the VE's answer because the ALJ misstated Dr. Guttman's opinion by stating that the hypothetical person could perform occasional fingering (as opposed to none at all, as Dr. Guttman opinied) (Doc. 16 at 15). Plaintiff argues that "[t]he inability to use or infrequency of one's dominant hand and extremity greatly erodes the occupational base for that person" (*id.*).[8]

Although Plaintiff has correctly identified a minor misstatement by the ALJ in the instant appeal, she failed to raise any objection to the ALJ's statement during her hearing. *See* White v. Astrue, 240 Fed. Appx. 632, 634 (5th Cir. 2007) (citing Carey v. Apfel, 230 F.3d 131, 146–47 (5th Cir. 2000) ("claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing")). Thus, Plaintiff's failure to raise any objection below, or further develop the issue at Plaintiff's hearing, likely precludes review of the error by this court.

However, even if the issue is properly before this court, Plaintiff is not entitled to relief. According to the DOT, none of the three jobs identified by the VE involve any fingering or fingering that would necessarily have to be performed with the right hand. *See* U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991), # 379.367-010 (a surveillance system monitor generally observes closed circuit television monitors, may have to hold a button to maintain observance of a particular location or adjust controls, and telephones police if necessary — given that Plaintiff can eat with her left hand and has taught herself to comb her hair with her left hand — she could similarly use her left hand to adjust controls or call the police if necessary; alternatively, Plaintiff could likely perform these functions with her right hand, as she admitted that she is able

[8]Although the ALJ misstated the fingering restriction, his questions clearly reflected limited use of Plaintiff's right arm and hand (i.e., her "dominant hand and extremity"); thus, the VE's answers in large part took into account Plaintiff's right-sided restrictions.

to use her right thumb and forefinger and write with "big fat pen"), # 237.367-022 (information clerk requires no fingering duties), # 372.667-030 (gate guard has little to no fingering duties, as the guard generally controls traffic at entrance gates by checking credentials, issuing passes as necessary, inspecting traffic, etc.). Thus, any statement by the ALJ constitutes harmless error, and because Plaintiff can clearly perform other work existing in significant numbers in the national economy — even with limited use of the right extremity — she is not disabled.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 23rd day of July 2008.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**